IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DEVERICK SCOTT,                                                                                                     PLAINTIFF
ADC #131042

v.                                   5:18CV00190-KGB-JTK

WENDY KELLY, et al.                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a Hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before

the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**DISPOSITION**

**I.  Introduction**

Plaintiff Deverick Scott is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference, negligence, and medical malpractice by Defendants with respect to his serious dental needs.[1] (Doc. No. 5)

This matter is before the Court on the Motions for Summary Judgment, Briefs in Support, and Statements of Fact filed by remaining Defendants Correct Care Solutions, Dove,[2] Jason Kelly, and Stringfellow (Doc. Nos. 44-46), and Rory Griffin (Doc. Nos. 49-51).[3] Plaintiff filed Responses, Briefs, and Statements of Fact in opposition to the Motions (Doc. Nos. 55-60).

---

[1] Defendants Wendy Kelly, Payne, Cashion, McHan, Does, and Gibson were dismissed on December 18, 2018 (Doc. No. 37).
[2] Originally identified by Plaintiff as "Drove."
[3] Originally identified by Plaintiff as "Roy" Griffin.

II.  **Amended Complaint (Doc. No. 5)**

Plaintiff alleged that after he submitted a sick call in November 2016, a dentist saw him in December 2016 and placed him on a "filling" list for one of his teeth. He saw a Defendant Stringfellow in February 2017, who again placed him on the list for a filling. In August 2017 he saw Defendant Dove, who also placed Plaintiff on the list for a filling. However, Plaintiff's tooth was not filled under December 5, 2017. He wrote several grievances during that time which Defendant Griffin found with merit, but still did not receive the requested treatment until December 2017. Defendants Jason Kelly and CCS also failed to ensure that the Varner Unit was staffed with a dentist and failed to provide the proper scheduled treatment.

III. **Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine

3

dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.    Motion of Defendants CCS, Kelly, Stringfellow, and Dove (Medical Defendants)**

Defendants state Plaintiff's allegations against them should be dismissed because he cannot show that they acted with deliberate indifference to his serious dental needs. In support they submit Plaintiff's medical records and deposition statements and the Affidavit of Dr. Susan McDonald, a dentist employed by Wellpath, LLC (formerly known as CCS), who is licensed to practice in the State of Arkansas.

    **1)    Medical Records** (Doc. No. 45-1)

The relevant portions of Plaintiff's medical records show the following:

On November 13, 2016, Plaintiff requested a dental cleaning and a new filling, and he was seen by Defendant Stringfellow, a dentist, on December 8, 2016. (P. 2) Stringfellow noted restorable occlusal decay in a tooth identified as **#18**, and placed Plaintiff on a "restorative list." (P. 6) On February 10, 2017, Plaintiff submitted a sick call request about his tooth and complained about an infection in his swollen jaw. (P. 23) Defendant Stringfellow again examined him on February 20, 2017, and noted that Plaintiff was biting his cheek on the right side and did not present with an infection or injury. (P. 25) He also noted that decay was present and restorable and placed him on the "restorative list" for tooth **#13**. (Id.)

On May 11, 2017, Plaintiff submitted a sick call request complaining about throat pain and pain in a left tooth. (P. 57) On May 15, 2017, he signed a refusal form indicating that he did not want to be examined at sick call. (P. 62) He submitted another sick call request on July 2, 2017 complaining about his throat and the delay in getting his teeth filled. (P. 73) He again refused sick

call for treatment on July 10, 2017. (Pp. 73, 75) During a July 14, 2017 sick call with a non-party medical professional, Plaintiff was treated for a boil on the right side of his face, with notations of no tooth pain or recent dental issues. (P. 77) The note also stated the following: "Mouth: teeth appearing good repair and with no sign of dental infection nor mass noted in the gingiva or submandibular areas." (Id.) Plaintiff was seen again at sick call on July 18, 2017 by Defendant Dove for complaints that his right face was swollen, who noted that the swelling was facial, not dental, in nature, and that Plaintiff's concern was the completion of his restorations. (P. 78) Dr. Dove conducted a limited examination and recommended filling of tooth **#13** and extraction of tooth **#17**. (Id.) On July 25, 2017, Plaintiff submitted a request for teeth filling, and on July 29, 2017, he submitted a complaint about throat pain. (Pp. 81, 84)

Dr. Dove saw Plaintiff on August 1, 2017 per his request to have his tooth filled. (P. 85) Dr. Dove noted occlusal decay in **#18**, with no redness or swelling, and that Plaintiff should return to the clinic for restoration of **#18**. (Id.) Plaintiff requested teeth cleaning and received such on August 24, 2017. (Id.) He was scheduled for restoration of **#18** on October 3, 2017, but that visit was cancelled because of no water at the Unit. (P. 106) Dr. Dove's notes indicate that "dental concerns are a non-restorable tooth #17 and tooth #18 has deep decay and may never have been restorable. An attempt will be made to restore tooth #18 with amalgam," and that Plaintiff was to return to the clinic at the next available time allowed. (Id.)   An October 5, 2017 addendum to the August 1, 2017 dental notes stated as follows: "Pt. refused this day to have tooth #17 extracted. Policy is extractions before any type of restorations. To reappoint for earliest restoration possible, Pt. previously was only on extraction list. By refusing extraction he effectively has slowed his treatment down. Will be seen for restoration in spite of ADC policy and procedure." (P. 85)   On

5

October 10, 2017, Plaintiff returned to the clinic for restoration of **#31**, per a previous diagnosis, with no redness or swelling noted. (Pp. 108, 110) Dr. Dove also again noted that **#17** should be extracted. (P. 110) Plaintiff appeared at dental sick call on November 2, 2017, and Dr. Dove noted the need to restore **#18** and that **#13** should be observed for three months. (P. 113) Dr. Dove further noted: "Pt. to return to have tooth #18 restored. Tooth #13 should only be observed as we have told him every time we have seen him. He has also acknowledged this every time we have seen him and explained to him what his treatment should and will be." (Id.) And on December 5, 2017, Plaintiff's tooth **#18** was restored, with notes of no redness or swelling. (P. 114)

In addition to these records, Defendants submitted records to show that from December 8, 2016 through January 4, 2018, Plaintiff (who was housed in administrative segregation) received almost daily health check-ins, at which times he never issued a complaint about dental pain. (Doc. No. 45-1)

    **2)**    **Plaintiff's deposition testimony** (Doc. No. 45-2)

Plaintiff testified that the time period at issue in his complaint is from November 2016 through December 2017, during which time he was housed in administrative segregation, and most of that time, in punitive isolation. (Pp. 8-11) He also testified that this lawsuit concerns the alleged non-treatment of only tooth **#18**, located on his lower left side, and not any of his other teeth. (P. 20) He first complained about the tooth in November 2016 and was placed on a list for a filling in December 2016. (Pp. 23, 25) He also stated that Dr. Dove told him **#31** needed to be filled before **#18** was filled. (P. 28) Plaintiff complained that the Unit did not have a resident dentist from November 2016 until Dr. Dove arrived in August 2017, and he did not see Dr. Stringfellow after February 2017. (Pp. 29-31, 33, 53) He also stated he wrote a grievance about his dental issues at

6

least once every month. (P. 39)  He acknowledged that during the time at issue he received Tylenol and Nortriptyline for pain and did not request any additional pain medications. (Pp. 57-58) He stated that he suffered pain, sometimes sharp, which was not constant, and which would "come and go". (Pp. 67-68)

### 3) McDonald Affidavit

Dr. McDonald stated that she reviewed Plaintiff's dental records from November 1, 2016 through December 31, 2017, and that during all times he had active prescriptions for pain medications including Nortriptyline, Gabapentin, Tylenol or Advil. Based on her review, she noted Plaintiff testified he never had a dental infection during the relevant period of time and that tooth #18 is good. She stated that Plaintiff did not have a serious dental need during the relevant period of time and may have experienced some dental sensitivity to # 18 but was not in constant pain. She also found no evidence of nerve involvement or infection in #18, indicating that it was not symptomatic and that the cavity he experienced did not reach the tooth's pulp, which contains the nerves and blood vessels.  Therefore, she concluded that it was appropriate to place him on the restorative list and provide a filling in normal course of business, noting that any pain was attributable to tooth #17, for which he refused extraction.  Finally, she noted that each time Plaintiff submitted a dental request form he was seen within a reasonable amount of time to assess acute needs, none of which were identified at those examinations. Based on all this, Dr. McDonald stated that the dental care treatment Plaintiff received was appropriate and satisfactory for his complaints, to a reasonable degree of medical certainty.

Based on this evidence, Defendants state Plaintiff cannot show that they acted with deliberate indifference to a serious medical need, and that the delay in medical treatment resulted

in a detrimental medical effect, citing Farmer v. Brennan, 511 US. 825, 837 (1994), and Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995).

In response, Plaintiff states Defendants abided by a custom and policy of delaying medical treatment and that it resulted in tooth **#18** "un-restorable." (Doc. No. 56, p. 2) Plaintiff alleges he was denied and delayed serious medical attention for over one year and that a reasonable jury could find that the CCS policies delayed and denied necessary medical treatments.

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d at 1326. Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits

indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany v. Carnahan, 132 F.3d at 1240.

Initially, the Court notes that the main facts in this case are not disputed by the parties. Plaintiff was first placed on the restorative list for tooth #18 in December 2016 and he received the restored filling in December 2017. Plaintiff was seen on several occasions by two different dentists and received treatment for other dental issues. And medical and dental professionals always responded to any requests Plaintiff submitted. To be sure, however, the Court cannot understand why it took a year to obtain the restorative filling, or why tooth #18 could not have been restored at the same time other teeth were restored. Yet there is no evidence that any of the Defendants were responsible for the scheduling of Plaintiff's appointments or otherwise acted with deliberate indifference to Plaintiff's needs. Next, the Court notes that although Plaintiff now claims in his response that he suffered pain, there are no dental-related complaints of pain in his medical records and there are large gaps of time between his inquiries about the status of his appointment. In addition, Plaintiff never complained of pain during the nearly daily checks made to his cell during that time and he admitted he was taking several different types of prescription pain killers. The medical records of his visits also always indicated no swelling, sign of infection, or tooth pain. The Court notes that on two occasions when Plaintiff did complain about pain in sick call requests, he subsequently refused treatment. And he admittedly rejected Dr. Dove's efforts to extract a tooth beyond restoration which was located next to #18. In the notes of his July 14, 2017 sick call visit for treatment of a facial boil, it was recorded that Plaintiff suffered no tooth pain or recent dental issues.

With respect to Plaintiff's allegations against the individual Defendants, the Court finds hardly any mention of Defendant Jason Kelley and it appears that Plaintiff's complaint with him was the same as with CCS, which was the delay in treatment and lack of a resident dentist. However, as noted above, Plaintiff has provided no medical evidence to show that he suffered a detrimental effect from the delay. See Beyerbach, 49 F.3d at 1326.  The record indicates that during the first part of 2017, the Varner Unit did not staff a full time dentist, and relied on visiting dentists from other Units.  However, even given the extended delay, Plaintiff was treated on several occasions for other ailments and the Court finds no evidence that any CCS policies/procedures caused a constitutional violation.

Plaintiff saw Defendant Stringfellow two times, and both times the dentist placed him on the restorative list.  Plaintiff first saw Defendant Dove in July 2017, and between that time and December 5, Plaintiff received new fillings in two teeth (##31, 18) and a teeth cleaning. There is no evidence in the record to support a finding that either of these dentists acted with deliberate indifference to Plaintiff's serious medical needs.  As stated in Dulany, Plaintiff does not present evidence "that the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of the Eighth Amendment right to be free from cruel and unusual punishment." 132 F.3d at 1234.  Therefore, the Court finds that the Medical Defendants' Motion should be granted.

In light of such, the Court declines to exercise jurisdiction over Plaintiff's state law negligence and medical malpractice claims. McLaurin v. Prater, 30 F.3d 982, 984-94 (8th Cir. 1994).

    B.    **Defendant Griffin's Motion**

1) **Official Capacity**

The Court first finds that Plaintiff's monetary claims against Defendant Griffin in his official capacity should be dismissed, pursuant to sovereign immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

2) **Individual Capacity**

The Court also agrees that Plaintiff's monetary claims against Griffin in his individual capacity should be dismissed, pursuant to qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[4] Defendants are entitled

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

According to Defendant Griffin's Declaration, he is employed by the ADC as Deputy Director for Health and Correctional Service, which includes responsibilities for: medical and mental health services, treatment programs, sex offender assessments, industry, accreditation, Paws in Prison, transportation, healthcare grievances, chaplaincy services, and volunteer services. (Doc. No. 49-1, p. 1) He reviews all inmate grievance appeals regarding medical issues to determine whether they have merit, whether policy was followed, and whether prescribed medical treatment was implemented. (Id.) If he determines that the issue in an appealed grievance has merit, attempts will be made to resolve the matter through the development of a corrective action plan, a monetary fine, or other resolution. (Id., p. 2) Griffin does not, however, provide medical treatment, supervise medical staff at the units, schedule medical appointments, become involved in the day-to-day delivery of medical care or services, or make clinical recommendations for decisions regarding inmate care. (Id.)

Griffin reviewed four grievances relevant to Plaintiff's complaint. In VSM 17-01645, Plaintiff complained on May 3, 2017, that he had been referred to the dentist since November 2016 for a filling and had not been seen, and that ADC and CCS violated policy by failing to provide him a dentist. (Id., p. 3; see also grievance, Doc. No. 49-3) Although the grievance initially was rejected as untimely, it was not, and Griffin found merit to Plaintiff's appeal due to the delay in

---

circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

12

treatment. (Id.) In addition, CCS developed a correction action plan in response, to evaluate the dental sick call process to ensure effectiveness and educate the dental assistant on the importance of ensuring timely-scheduled dental procedures. (Id.)

In grievance VSM 17-02455, Plaintiff complained on July 14, 2017 about a nine-month dental delay which caused a wanton infliction of pain. (Id., pp. 3-4; see also grievance, Doc. No. 49-4) The medical department reviewed Plaintiff's records and noted that the grievance had merit but that the issue was resolved on August 1, 2017. (Id., p. 4) However, on appeal, Plaintiff stated he did not receive the filling and a check of his electronic medical record resulted in no documentation that he had. (Id). Griffin then found the appeal with merit, and his staff contacted the medical department and requested that Scott be scheduled for fillings. (Id.) CCS also submitted another corrective action plan in response to Griffin's decision. (Id.)

On August 17, 2017, Plaintiff filed grievance VSM 17-02877, complaining that he did not receive a filling the week prior as scheduled. (Id., pp. 4-5; see also grievance, Doc. No. 49-5) Plaintiff further complained he experienced pain and suffering for eleven months due to delays and being denied dental care. (Id.) Griffin reviewed Plaintiff's medical records and found the appeal with merit and CCS submitted a corrective action plan. (Id.) He also noted that Plaintiff had received the filling. (Id.)

Finally, in grievance VSM 17-03388, on October 4, 2017, Plaintiff complained he had waited over a month for his filling, but by the time Griffin received the appeal, Plaintiff had received the filling, so he found the appeal without merit and the issue addressed in VSM 17-02877. (Id., p. 5; see grievance, Doc. No. 49-6.)

Plaintiff claims that Griffin's knowledge of his dental delays and his position of authority

13

necessitated his involvement in ensuring that Plaintiff received appropriate care. Having reviewed the evidence and case law, the Court finds Griffin acted appropriately and did not violate Plaintiff's constitutional rights.

First, Defendant Griffin's knowledge of Plaintiff's dental issues is basically limited to the first two grievances filed, because by the time the appeals in the latter two grievances reached Griffin, Plaintiff's tooth was restored. Griffin's response to the first grievance, VSM 17-01645 was to find that the appeal had merit and CCS submitted a corrective action plan. His response to the second grievance, VSM 17-02455 was to have his staff contact the medical department and request that Plaintiff be scheduled for the fillings. Griffin filed that response, finding the appeal with merit, on September 30, 2017. We know from the record that Plaintiff was scheduled for the filling on October 3, 2017, but that it was postponed because the Unit lacked water. The record indicates Plaintiff had one tooth filled on October 10, 2017, and another tooth filled on December 5, 2017. Whether or not Griffin had anything to do with this is not known; however, there is no evidence that Griffin acted with deliberate indifference to Plaintiff's serious medical needs, especially since he is not a medical doctor and his role is limited to reviewing the final step in the grievance process. Therefore, the Court finds as a matter of law that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right by Defendant Griffin.

As noted above, the Court also will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Griffin.

IV. **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motions for Summary

Judgment (Doc. Nos. 44, 49) be GRANTED, and Plaintiff's complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 2nd day of July, 2019.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE